**PETRACO–VALLEY OIL & REFINING CO., Applicant,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, Respondent.**

**PETRACO–VALLEY OIL & REFINING CO., Appellant,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, Appellee.**

**Nos. 5–47, 5–48.**

Temporary Emergency Court of Appeals.

Submitted Feb. 15, 1980.

Decided May 7, 1980.

Robert L. Ketchand, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., with whom Thomas W. Houghton, Rueben C. Casarez, Nancy Leighton and William N. Blanton, III, Houston, Tex., were on brief for applicant–appellant Petraco–Valley Oil & Refining Co.

Mark Kreitman, Dept. of Energy, Washington, D. C., with whom Nancy C. Crisman and Thomas P. Humphrey, Washington, D. C., were on the brief for respondent–appellee Department of Energy.

Before INGRAHAM, ESTES and BECKER, Judges.

WILLIAM H. BECKER, Judge.

In No. 5–47, Petraco–Valley Oil & Refining Co. (Petraco) filed in this Court an original application for a temporary "stay", and for preliminary and permanent injunctions to prevent the United States Department of Energy (DOE) from enforcing an "alleged obligation" of Petraco to purchase 211,750 entitlements for September 1979. DOE opposes this application. On February 4, 1980, before hearing of oral arguments, a temporary "stay" in No. 5–47 was granted by the Presiding Judge of this Panel, and later continued in force by this Panel after the hearing of oral arguments on February 15, 1980.

In No. 5–48, Petraco, plaintiff below, filed a notice of appeal from an order entered by the United States District Court for the Southern District of Texas "purporting to deny Plaintiff's Motion for Temporary Restraining Order" entered on February 1, 1980 in Civil Action No. H–80–180. DOE has moved to dismiss this appeal for lack of jurisdiction, and on other grounds.

For the reasons stated hereinafter, in No. 5–47 the original application for injunctive relief is denied and the temporary stay order is vacated; in No. 5–48 the appeal is dismissed.

Petraco is a Texas corporation exclusively engaged in the business of refining crude oil and marketing the refined products. It is classified by DOE as a "small and independent refiner" as defined in 10 C.F.R. § 211. (January 14, 1980 Decision and Order of Office of Hearings and Appeals (OHA) of DOE Denying Application for Temporary Exemption dated November 19, 1979, Paragraph 2, "Decision" hereinafter.) Petraco owns and operates a refinery in Brownsville, Texas which began operations in September 1979. To begin operations Petraco purchased a start–up inventory of 262,000 barrels of crude oil. (Decision, paragraph 2.)

DOE determined that, on the basis of its crude oil receipts during September 1979, Petraco was obligated under the Entitlements Program, 10 C.F.R. § 211.67, to purchase 211,750 entitlements during the month of November 1979. (Entitlements Notice for September 1979, 44 Fed.Reg. 68515, published November 29, 1979.)

Earlier, Petraco had been given notice of this obligation which was later listed in the Entitlements Notice for September 1979, *supra.*

Petraco states that it had been notified by mailgram on October 12, 1979 by the Economic Regulatory Administration (ERA) of DOE that ERA had suspended all exemptions from the obligations of the Entitlements Program in the form of start–up inventory adjustments pending resolution of regulatory questions and that applications based on "hardships created by this action should be submitted to the Office of Hearings and Appeals" of DOE for appropriate action.

On November 19, 1979 Petraco filed with DOE its Application for Temporary Exception Relief from its asserted obligation to purchase entitlements based on the receipts of Petraco in September 1979 of its "start–up" crude oil inventory. Petraco asked for the temporary exception pending the determination of an Application for Exception that it stated it intended to file, but had not filed at the time No. 5–47 was filed in this Court nor at the time the notice of appeal was filed in No. 5–48. (Counsel at oral argument on February 15, 1980 stated that the application for exception relief was filed the day before, and furnished a copy thereof.)

In the administrative proceedings on its Application for Temporary Exception Relief filed November 19, 1979, and later in its complaint for injunctive relief, filed in the District Court for the Southern District of Texas in Civil Action No. H–80–180 on January 25, 1980, and in the original action for injunctive relief filed in this Court on February 4, 1980 in No. 5–47, Petraco has stated the following grounds for relief:

1. Since the Entitlements Program began in 1974, the entire crude oil inventories of price–controlled domestic crude oil of then existing refiners were expressly exempted from the

Entitlements Program, citing 10 C.F.R. § 211.62 issued by the Federal Energy Administration (FEA), predecessor of DOE.

2. Thereafter, since November 1, 1974, FEA and ERA of DOE, which succeeded the FEA in the administration of the Entitlements Program, routinely granted start–up inventory adjustments to new refiners to bar discrimination against, and to promote entry of, new refineries, and to place them on an equal footing with refineries in existence on November 1, 1974, and to promote the increase of domestic refinery capacity, and because of the "fact" that the amount of crude oil that a refiner must maintain in inventory to sustain normal operations is never refined.

3. On November 28, 1978, Petraco's representative met with "officials from ERA and Office of General Counsel of DOE to advise them of plans for its new refinery" and to learn of the availability of exemptions of start–up inventories of new refineries from the Entitlements Program; that at the November 1978 meeting and at additional meetings in April, July, August and September, 1979, and thereafter, the "Entitlement Programs Manager" and other "responsible DOE officials" repeatedly assured Petraco that the new Brownsville refinery would receive a start–up inventory adjustment equal to the normal inventory of the refinery, notwithstanding the issuance in January 1979 of *Sierra Anchor Refining Co.*, 3 DOE ¶ 80,114 (1979), in which OHA of DOE questioned the authority of ERA to grant start–up inventory exemptions from the Entitlement Program, and remanded the question to ERA. Further, that following the *Sierra Anchor Refining Co.* decision, OHA did not rescind the start–up adjustment that *Sierra Anchor Refining Co.* had received,

and left undisturbed other start–up inventory adjustments ERA had granted; that on July 17, 1979 ERA and DOE advised Petraco that it was still the official policy of ERA to grant start–up inventory adjustments for new refineries despite the *Sierra Anchor Refining Co.* decision, *supra.*

4. On September 6, 1979, "ERA notified applicant by telephone that its refinery qualified for and would receive a start–up inventory adjustment and that written confirmation would be mailed within a week." Further, Petraco continued to advise "ERA officials" of its plans and discussed "continuing availability" of a start–up inventory adjustment for its Brownsville refinery as late as October 10, 1979, one day before ERA undertook to suspend all start–up inventory adjustments.

5. Solely in reliance on the above described assurances by ERA of a start–up inventory adjustment and its continuing award of such adjustments to others, and in anticipation of a start–up of its refinery in mid–August 1979, Petraco purchased in August 179,323 barrels of (price–controlled) lower tier crude oil at $7.89 ($6.29 plus $1.60 for freight charges) and 100,000 barrels of (price–controlled) upper tier crude oil at $15.11 ($13.51 plus $1.60 for freight charges) per barrel. After receiving delivery of this crude oil, applicant Petraco commenced operations at its new refinery by refining 95,988 barrels of the price–controlled crude oil prior to the end of September 1979.

6. The mailgram notice of October 12, 1979 from ERA of suspension of start–up inventory adjustments was received without any prior notice.

7. On November 19, 1979 Petraco filed its Application for a Temporary Exception Relief and Temporary Stay asserting a right to a 262,000 barrel

start–up inventory adjustment based on the following: (a) the impropriety or inequity of ERA's suspension; (b) the reasonableness of reliance of applicant on the continuing practices and assurances of ERA that applicant would receive a start–up inventory adjustment; and (c) estoppel of DOE.

8. The Entitlements List published November 29, 1979 stated that Petraco was required to purchase 211,750 entitlements at a total cost of $3,805,147.50. Petraco did not purchase the entitlements because of the policy of ERA to refrain from enforcing entitlement obligations while an application for a stay was pending before OHA of DOE.

9. Petraco "does not currently have the funds (either on hand or expected as accounts receivable) to satisfy its present short–term liabilities to its various creditors as well as this unforeseen entitlements obligation." Failure to enjoin enforcement of the entitlements obligations "will seriously cripple if not completely destroy the continuing viability of Appellant's business."

10. In the District Court and in this Court Petraco adds the following conclusions: On January 14, 1980 OHA denied the relief sought by Petraco in a formal decision, "which is not subject to any administrative review, see 10 C.F.R. § 205.126," and which "effectively decides all the legal issues concerning the legality of ERA's October 11, 1979 suspension notice and ERA's Entitlements Notice for September 1979. Any administrative appeal of these notices would therefore be futile. While the January 14 Order implies that some future exception relief may possibly be available ... OHA has decided all issues Applicant could raise in any effort to obtain additional relief."

11. On January 18, 1980 Petraco was notified by ERA directing it to purchase the September 1979 entitlements before January 28, 1980; and that the failure to do so may subject Petraco to civil and criminal penalties.

12. In No. 5–47 in this Court Petraco states that it filed an action in the United States District Court to secure a declaratory judgment and injunctive relief. The motion of Petraco for a Temporary Restraining Order was heard on notice, argued, and denied by the District Court on February 1, 1980. The request of Petraco that the District Court certify its decision of February 1, 1980 for an interlocutory appeal was denied the same day by the District Court.

*Decision of OHA of DOE on the Application for Temporary Exception Relief by Petraco.*

After the filing by Petraco, on November 19, 1979, of an Application for Temporary Exception Relief from the provisions of the Entitlements Program (10 C.F.R. § 211.67) in respect to the obligation of Petraco to purchase in November 1979 entitlements based on the oil receipts of Petraco during September 1979, OHA of DOE conducted administrative hearings and rendered a decision on January 14, 1980 denying the application.

The nature and quality of that decision appears from the text thereof as follows:

1) On November 19, 1979, Petraco–Valley Oil and Refining Company (Petraco–Valley) filed an Application for Temporary Exception from the provisions of 10 CFR 211.67 (the Entitlements Program). Petraco–Valley's request, if granted, would relieve the firm of its obligation to purchase entitlements during the month of November 1979 based on the firm's crude oil receipts during September 1979. *See* Entitlements Notice for September 1979, 44 Fed.Reg. 68515 (November 29, 1979). Petraco–Valley's receipts reported during September 1979 relate pri-

marily to crude oil purchased by the firm for establishment of a starting inventory. The temporary exception is requested pending a final determination on an Application for Exception which the firm states it intends to file shortly.

2) Petraco–Valley owns and operates a refinery in Brownsville, Texas. Petraco–Valley's refinery has a certified capacity of 12,260 barrels per day (BPD) of crude oil. The firm does not own more than 70 percent of its refinery input of domestic crude oil and therefore is a small and independent refiner as those terms are defined in 10 CFR, Part 211. Petraco–Valley began operations in September 1979 and in connection with those operations purchased a starting inventory of 262,000 barrels of crude oil.

Under the provisions of the Entitlements Program, every eligible refiner is issued a number of entitlements that is equal to the national domestic crude oil supply ratio (DOSR) multiplied by the volume of the crude oil runs to stills reported by the refiner for a given month. 10 CFR 211.67(a)(1). If the number of entitlements issued to the refiner in a month is less than the number of barrels of deemed old oil included in the refiner's adjusted crude oil receipts (as defined in 10 CFR 211.61), the refiner is required to purchase entitlements. If the number of entitlements issued is greater than the number of barrels of deemed old oil included in a refiner's crude oil receipts, the refiner is required to sell entitlements. 10 CFR 211.67(b)(1); 10 CFR 211.67(c). The volume of deemed old oil attributed to a refiner in a month is equal to the number of barrels of old crude oil plus a fraction (as specified in each monthly Entitlements Notice) of the number of barrels of upper tier crude oil included in its crude oil receipts. 10 CFR 211.67(b)(2). The adjusted deemed old oil receipts, the number of entitlements issued, and the entitlement purchase or sales obligations of each refiner are specified in the monthly Entitlements Notices issued by the DOE.

3) The normal relationship between deemed old oil receipts and crude oil runs to stills does not exist at the outset of the operation of a new refinery. At that time, the refiner must purchase crude oil to build inventories to levels sufficient to sustain refinery operations. The acquisition of crude oil for this purpose is covered by the definition of crude oil receipts set forth in Section 211.62, and, therefore, the acquiring firm incurs an entitlement purchase obligation to the extent that its initial receipts include deemed old oil.

4) The record in this matter indicates that the Economic Regulatory Administration (ERA) of the DOE has in the past made adjustments to the entitlements purchase obligations of new refineries to reflect an allowance for the reasonable starting inventories of those firms. On January 19, 1979, the Office of Hearings and Appeals issued a Decision and Order in which it determined that the ERA does not have the regulatory authority to grant such adjustments. *See Sierra Anchor Refining Co.*, 3 DOE Par. 80,114 (1979). This position was reiterated in subsequent Decisions of the Office of Hearings and Appeals. *See CIBRO Petroleum Products, Inc.*, 3 DOE Par. 82,009 (1979) and *Friendswood Refining Corp.*, 3 DOE Par. 82,015 (1979).

5) In its request for temporary exception, Petraco–Valley states that from time to time beginning in April 1979 it received oral assurances from ERA personnel that the agency was continuing its policy of permitting new refiners to exclude from their entitlements obligations a portion of their initial crude oil receipts for starting inventories. Petraco–Valley acknowledges that it was aware of our decision in *Sierra Anchor Refining Co., supra*, but chose rather to rely on statements by ERA personnel that the firm would qualify for a starting inventory adjustment. Petraco–Valley states that because of ERA's representations, the firm entered into certain crude oil purchase, sale and trade arrangements beginning in May 1979 and continuing through August 1979 which were designed to take advantage of the expected starting inventory adjustment. On October 12, 1979, however, the firm received written

notice from ERA that all starting inventory adjustments were suspended immediately pending "resolution of regulatory questions."

6) Petraco–Valley contends that the ERA's decision to discontinue adjustments for starting inventories will cause the firm to incur serious financial difficulties unless a temporary exception is granted. Petraco–Valley claims that it does not possess the funds necessary to meet its November entitlements purchase obligation of $3,805,147 and that unless exception relief is granted the firm could well be forced to cease its refinery operations. The firm claims that it would be inequitable to expect it to purchase entitlements for its inventory when the ERA has historically granted adjustments to other new refiners. Finally, Petraco–Valley contends that its reliance on ERA's representations were justified and that the DOE is estopped from changing its position.

7) The criteria to be considered and weighed by the Office of Hearings and Appeals in determining whether a temporary exception should be granted are:

(1) Whether a showing has been made that irreparable injury will result in the event that the ... temporary exception is denied;

(2) Whether a showing has been made that the denial of the ... temporary exception will result in a more immediate hardship or inequity to the applicant than to the other persons affected by the proceeding;

(3) Whether a showing has been made that it would be desirable for public policy or other reasons to grant immediate relief pending a decision on the merits of the underlying appeal or exception proceeding;

(4) Whether a showing has been made that it would be impossible for the applicant to fulfill the requirements of an outstanding order or regulatory provision; and

(5) Whether a showing has been made that there is a strong likelihood of success on the merits.

8) On the basis of the present submission, we have concluded that Petraco–Valley's Application for Temporary Exception does not satisfy these criteria. The firm has submitted financial data which show that in the event relief is denied it may in fact incur financial difficulties. Petraco–Valley also contends that its sources of credit may be restricted if exception relief is denied, thereby making it difficult if not impossible for it to meet its entitlements purchase obligation. This showing and contention, however, are on the basis of data submitted only for Petraco–Valley. The firm's primary owner is Petraco Holding Company, a Luxembourg corporation. Petraco–Valley has refused to provide any financial data whatsoever for its parent company or even to identify the owners of that company. The holding company has been described only generally as an independent European company which trades in crude oil and petroleum products. The individual owners of Petraco Holding Company are evidently not known even to the officers of Petraco–Valley. It has been stated by the applicant, however, that the Petraco Holding Company or its owners as individuals have cosigned sizeable bank loans for example with the Banque Arabe et Internationale D'Investissements, Paris, France in order to finance Petraco–Valley's operations. The exact extent, nevertheless, to which Petraco Holding Company is capable of contributing to Petraco–Valley's operations remains hidden. In the absence of detailed information concerning Petraco–Valley's owners or the credit available to the firm, we are unable to make a finding that Petraco–Valley will suffer irreparable injury if temporary exception relief is denied or that the firm will be incapable of meeting its November entitlement purchase obligation. We note in this regard that for the purposes of 10 CFR, Part 211, the definition of a firm may include "(a) parent and the consolidated and unconsolidated entities (if any) which it directly or indirectly controls." 10 CFR 211.-51; *see also, The Shell Company (Puerto Rico) Limited,* 3 DOE —— (March 16, 1979). Consequently, a showing that Petraco Hold-

ing Company is unable to provide adequate financing for Petraco–Valley's operations would be necessary to find that temporary exception relief is justified in this case.

9) Petraco–Valley also contends that it should receive an inventory adjustment so that it will be in an equitable position *vis-a-vis* other refiners. We see little merit to Petraco–Valley's argument that the granting of inventory adjustments to other new refiners justifies similar action with respect to Petraco–Valley. As we have previously stated in a number of Decisions, the starting inventory adjustments granted by the ERA after the inception of the Entitlements Program had no basis in law. *Sierra Anchor, supra; CIBRO Petroleum Products, Inc., supra.* Moreover the firm was aware of the holding in *Sierra Anchor.*

10) Petraco–Valley further claims that it will suffer a gross inequity if exception relief is denied because the firm entered into several transactions that it would not otherwise have entered into were it not for the ERA assurances of a starting inventory adjustment. The firm states that it entered into several purchases, sales and trades in order to acquire a starting inventory consisting of roughly two thirds lower tier and one third upper tier domestic crude oil. In response to a request for a detailed explanation of these transactions, however, the firm stated that its only transaction was with the Independent Refining Corporation of Houston, Texas. In that transaction Petraco–Valley purchased 179,323 barrels of lower tier crude oil at $6.29 per barrel and 100,000 barrels of upper tier crude oil at $13.51 per barrel.

11) We are not persuaded that a new refinery has suffered a gross inequity as a result of its purchase of domestic oil at a price which is less than the weighted average costs for that product incurred by other refiners.[1] Moreover, Petraco–Valley has not satisfactorily explained the manner in which the firm's beginning inventory was acquired. Obligations to supply domestic crude oil are governed by 10 CFR 211.63 (the Supplier/Purchaser Rule). Petraco–Valley has failed to demonstrate how it was

able to acquire lower tier crude oil at a price which was less than market value when the supply of virtually all of that product was committed to other purchasers under the Supplier/Purchaser Rule. In connection with several similar proceedings before the Office of Hearings and Appeals, we have become aware that firms constructing new small refineries have attempted to take advantage of the ERA's unauthorized starting inventory adjustments by entering into complex and interwoven purchase, sale and trade transactions. In *Gulf Energy Refining Corp.,* 3 DOE Par. —— (November 30, 1979), for example, we found that the firm had recertified crude oil by entering into two separate series of transactions with various other firms. These transactions involved the sale of imported oil by Gulf Energy at a price which was less than its acquisition cost, followed by exchanges of oil or the purchase of domestic old oil at a price which substantially exceeded the average price of that product. Through these transactions, Gulf Energy was able to recertify imported crude oil, which at all times remained in its own tanks, as domestic old oil. We observed in *Gulf Energy* that the legality of the transactions involved was questionable. While we do not conclude that the present proceeding is characterized by similar circumstances, we note again that the withholding of information regarding the operations of Petraco–Valley's parent company casts a cloud over the manner in which Petraco–Valley was able to purchase its starting inventory. We in any event are unable to conclude, based on the present record, that Petraco–Valley suffered a gross inequity as a result of its purchases of crude oil in reliance on ERA's assurances that the firm would be granted a starting inventory adjustment.

12) Finally, Petraco–Valley asserts that the DOE is estopped from refusing to honor the commitments made by ERA personnel and that there is a substantial likelihood that it will prevail on the merits of its exception request. In support of this contention, the firm states that it considered our opinion in *Sierra Anchor Refining Co.,*

*supra*, to be advisory only and that its reliance on ERA advice was justifiable. We do not agree. As we have previously noted, the ERA had neither the statutory nor the regulatory authority to grant starting inventory adjustments to new refiners. In *Sierra Anchor*, we stated:

An implicit factor in the submission of both Sierra Anchor and the Office of Fuels Regulation is the assumption that the Entitlements Office may properly adjust a new refiner's entitlement purchase obligations to reflect its acquisition of initial crude oil inventories. This assumption is not correct ... Although legitimate policy considerations might well exist that would warrant such modifications, *the ERA is bound by the applicable regulations, and those regulatory provisions do not permit it to make those modifications in a discretionary manner.*

*Id.* at 80,584, 80,585 (emphasis added). We specifically suggested in the *Sierra Anchor* Decision that the ERA initiate rulemaking to provide a mechanism by which starting inventory adjustments could be made. Absent a rulemaking, we stated that new refiners would have to file requests for exception to obtain inventory adjustments. *See also CIBRO Petroleum Products, Inc., supra*. The language in *Sierra Anchor* is unambiguous and clearly not advisory. Accordingly, we find that Petraco–Valley's reliance on the assurances of ERA personnel was not justified and that principles of estoppel do not apply in this manner.

It is of course possible that Petraco–Valley may ultimately receive some exception relief relating to its starting inventory. However, the determination of the nature and extent of relief, if any, must be based on the development of a full record, including financial information relating to its parent firm. Despite requests for that material, it has not been provided and the present record affords no basis for the approval of the relief Petraco–Valley seeks.

IT IS THEREFORE ORDERED THAT:

The Application for Temporary Exception filed by Petraco–Valley Oil and Refining Company on November 19, 1979 be and hereby is denied.

1. Based on reports submitted to the DOE by refiners regarding their adjusted crude oil receipts for September 1979, the pricing composition and weighted average costs were $6.54 per barrel for lower tier crude oil and $14.01 per barrel for upper tier crude oil. *See* 44 Fed.Reg. 68514 (November 29, 1979).

[Paragraph numbers added to Decision.]

A copy of this Decision was filed in the District Court and in this Court by Petraco as an attachment to its pleadings.

From the foregoing quoted decision of OHA, it appears that OHA accurately noted the substance of all the basic factual and legal contentions asserted by Petraco in support of its application for a temporary exception, and later asserted in the District Court and in this Court as grounds for injunctive relief. In the decision five rational criteria for determining whether a temporary exception should be granted were expressly enunciated by OHA. The decision of OHA determined that the showing of Petraco was insufficient, for reasons that were not arbitrary, capricious, irrational, contrary to law, unsupported by substantial evidence, or abusive of discretion.

■ First, it was noted by OHA, as conceded through the hearings in the District Court and in this Court, that Petraco is owned primarily by Petraco, Inc. Holding S.A., a Luxembourg holding corporation; that Petraco has failed to provide any financial data concerning the ownership and assets of its parent holding company, in spite of the fact that under 10 C.F.R. § 211.51 DOE may treat as a firm "a parent and the consolidated and unconsolidated entities (if any) which it directly or indirectly controls." Obviously, as concluded by OHA, the parent holding company is part of the firm; and Petraco cannot show irreparable injury or immediate hardship in paying the challenged obligation to purchase entitlements, pending resolution of further administrative and judicial proceedings, without showing the financial data concerning the ownership and assets of the holding company that is its principal owner. On

the admitted facts OHA was justified in finding that the showing of irreparable injury in support of the application for a temporary exception was inadequate.

■ Second, the challenged decision dealt rationally and permissibly with the equitable claims of Petraco in light of its knowledge of the *Sierra Anchor Refining Co.* decision, *supra*, and the law therein declared. In considering the claim of gross inequity to Petraco, OHA found that Petraco has failed to explain the manner in which it was able to purchase the lower tier oil in its start–up inventory at a price which was less than the market value, when at that time virtually all lower tier oil was found to be committed to other purchasers under the Supplier–Purchaser Rule (10 C.F.R. § 211.63). OHA noted its knowledge that other firms constructing small refineries had attempted to take advantage of the allegedly unauthorized start–up inventory adjustments by ERA, by entering into questionable "complex and interwoven purchase, sale and trade transactions," giving as an example the facts found in *Gulf Energy Refining Corp.*, 3 DOE ¶———, (Case Nos. BES–0016 & BEL–0016, November 30, 1979). OHA reasonably noted that in seeking equity, Petraco failed to furnish the information about its holding company and its acquisition of its start–up inventory to remove the cloud cast over the manner in which Petraco was able to purchase its start–up inventory.

■ Finally, in its decision OHA made a rational and permissible administrative appraisal of the reliance and estoppel claims of Petraco, in determining the insufficient showing of likelihood that Petraco would ultimately prevail on the merits.

■ The decision by OHA in denying the application for a temporary exception was not shown to be arbitrary, capricious, an abuse of discretion, contrary to law, unsupported by substantial evidence, and was not the result of inadequate or unfair procedures.

*Original Application For Injunctive*
*Relief in No. 5–47*

■ On February 4, 1980 Petraco filed in this Court an original proceeding that it entitled "Application For Injunctive Relief," which was verified and accompanied by motions for a stay order and a preliminary injunction against enforcement by DOE of the obligation of Petraco to purchase entitlements, described in the September 1979 entitlements list published in 44 Fed.Reg. 68515 on November 29, 1979. Jurisdiction of this application was claimed by Petraco under the All Writs Act, 28 U.S.C. § 1651, in addition to § 5(a)(1) of the Emergency Petroleum Allocation Act of 1973 (EPAA), and § 211 of the Economic Stabilization Act of 1970 as amended (ESA), 12 U.S.C. § 1904 note. The determination of this application insofar as it seeks an extraordinary writ is governed by Rule 21, F.R.App.P. Although it seeks "injunctive relief" it is in substance under the All Writs Act an application for mandamus to compel the district court to grant a temporary restraining order or preliminary injunction, and also an original application for injunctive relief.

This original application was based on substantially the same factual and legal contentions previously asserted in support of the application for a temporary exception denied by OHA of DOE, and the complaint for declaratory and injunctive relief previously filed in the United States District Court for the Southern District of Texas, described below. The application filed in this Court, as in the prior proceedings, failed to disclose the identity of shareholders and financial data concerning the parent Luxembourg corporate holding company which owns about 70% of the stock of Petraco, according to counsel for Petraco. (Dist.Ct. Transcript, February 1, 1980, at 15.) In its original application to this Court, Petraco, after stating that it had cash, accounts receivable, and inventory in the sum of $10.8 million and short term liabilities to unspecified parties, exclusive of its entitlements obligations, alleged that if forced to purchase the entitlements obligations of $3.8 million "its ability to continue

operations as a viable refiner will be seriously impaired if not destroyed."

On the basis of the verified complaint, affidavits, and exhibits submitted therewith on February 4, 1980, the Presiding Judge of this Panel issued a temporary stay order enjoining the enforcement of the September 1979 entitlements obligations of Petraco published in November 1979. This stay order was continued by this Panel on February 15, 1980.

### Proceedings in and Decision of the District Court

Having failed to secure from DOE a temporary exception from its obligation to purchase entitlements, Petraco filed in the United States District Court for the Southern District of Texas a verified Complaint for Declaratory and Injunctive Relief, against DOE, designated as Civil Action No. H–80–180. In that complaint in four counts, plaintiff Petraco asserted in greater detail substantially the same factual and legal contentions asserted in its application to DOE for a temporary exception, and later asserted in the original application filed in this Court in No. 5–47. Further, Petraco sought in the District Court temporary, preliminary and permanent injunctive relief enjoining DOE from enforcing the entitlements obligation based on the September 1979 receipts of crude oil by Petraco. Neither in the complaint filed in the District Court, nor in the subsequent hearing on the motion for temporary restraining order, did Petraco state the data concerning the identity of the shareholders or financial condition of its parent Luxembourg holding company. In alleging facts to support its claim of irreparable injury, Petraco alleged that it did not have the financial resources to pay the amount of its entitlement obligations; and that Petraco "may", absent relief from the District Court, be forced to shut down indefinitely its Brownsville refinery, and forego plans to expand and upgrade the refinery. (Complaint, paragraph 1.) Similar allegations appear in the original application filed in this Court, in which it is stated that if applicant is forced to

purchase $3.8 million of entitlements on February 4, 1980 "its ability to continue operations as a viable refiner will be seriously impaired, if not destroyed." (Application, paragraph 27.)

On February 1, 1980 the District Court held a plenary evidentiary hearing on the motion for a temporary restraining order. On being offered an opportunity to present evidence, Petraco's counsel offered only the verified Complaint, Plaintiff's Exhibit 1.

■ Under the controlling rule of the Supreme Court of the United States, this hearing should be considered as a hearing on a motion for a preliminary injunction, which it was in substance. *Sampson v. Murray*, 415 U.S. 61, l.c. 86–88, 94 S.Ct. 937, l.c. 951, 39 L.Ed.2d 166, l.c. 185 (1974).

After submission of the motion for a temporary restraining order, the District Court denied the motion by formal order of February 1, 1980 and filed Findings of Fact and Conclusions of Law.

In Part I, the findings of fact on the subject of irreparable injury, the District Court found that (1) Petraco has failed to inform the District Court or DOE of the identity of the owners or financial data concerning its parent corporation, and that therefore no determination of the claim of irreparable injury was possible; (2) Petraco's counsel previously represented to an analyst of DOE at the OHA that Petraco had $2,000,000 available and could raise the remainder of the $3,800,000 obligation; and (3) there was no risk of loss to plaintiff because of plaintiff's right to return of any monies that may be found to be improperly required to be paid for the entitlements.

In Part II, the findings of fact on the merits, the District Court found that (1) Petraco did not reasonably rely upon representations of government officials, which were clearly *ultra vires*; (2) Petraco received no assurances of a grant of an inventory adjustment prior to April 1979; (3) any such assurances on or after April 1979 were *ultra vires*; (4) plaintiff did not rely to its detriment on such *ultra vires* representations; (5) Petraco purchased crude oil at or

below market price to complete its start–up inventory; and (6) Petraco has failed to exhaust its administrative remedies.

In Part III, the findings of fact on public interest, the District Court found that granting of the motion for a temporary restraining order would (1) require other participants in the entitlements program to bear the burden of Petraco's entitlement obligation; (2) raise the price of petroleum products to American consumers; (3) encourage reliance by regulated parties upon *ultra vires* acts by government officials; (4) encourage regulated parties to shop for advice within DOE; and (5) contravene the judicial policy of review of decisions of administrative agencies upon full records developed by the agencies.

The District Court in its conclusions of law concluded that plaintiff had failed to demonstrate (1) irreparable injury; (2) that the injury to Petraco would outweigh the harm to the public interest resulting from a temporary restraining order; (3) that Petraco is likely to succeed on the merits; and (4) that the issuance of the temporary restraining order would serve the public interest.

 There is substantial evidence in the record in the District Court to support each of the findings of fact of the District Court (except possibly the subordinate, immaterial paragraph (2) of Part I above, which was based upon the unsworn but undenied statement of the counsel for DOE at the district court hearing held on February 1, 1980) and which are not clearly erroneous, and therefore should not be set aside. Rule 52(a), F.R.Civ.P. Further, the conclusions of law are supported by the material findings of fact, and in accordance with applicable legal principles.

 Counsel for Petraco contends that the District Court refused to accept the averments of its verified complaint, and found facts contrary thereto. This contention is without merit for several reasons. First, the verified complaint failed to meet the burden of alleging the facts concerning the financial data and ownership of the parent holding corporation. Second, the verified complaint was replete with factual and legal conclusions that are not admitted. Third, the facts as distinguished from the conclusions alleged in the complaint were not contradicted by the findings of the District Court. Fourth, certain facts found by the District Court were uncontroverted and admitted. Fifth, the adversary hearing by the District Court was in substance an evidentiary hearing on a motion for preliminary injunction. *Sampson v. Murray, supra*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Sixth, Petraco had the burden of proof on the material issues and failed to meet it. Finally, the facts found by OHA of DOE in the Decision before the District Court as an attachment to the complaint of Petraco must be accepted on judicial review unless they are shown to be (1) unsupported by substantial evidence, (2) arbitrary, (3) capricious, (4) the result of an abuse of discretion, (5) contrary to law, or (6) the result of inadequate or unfair procedures. 5 Mezines, Stein & Gruff, *Administrative Law* §§ 51.01, 51.02, 51.03 and 51.04 (1979).

 In the absence of exceptional circumstances not present in these cases there is a rebuttable presumption of validity of findings of fact by an administrative agency, which casts the burden of proof of invalidity on the party challenging the findings of fact. *Anniston Manufacturing Company v. Davis*, 301 U.S. 337, l.c. 357, 57 S.Ct. 816, l.c. 825, 81 L.Ed. 1143, l.c. 1156 (1937); *Coleman v. PACCAR, Inc.*, 424 U.S. 1301, l.c. 1306, 96 S.Ct. 845, l.c. 848, 47 L.Ed.2d 67, l.c. 72 (1976); *National Labor Relations Board v. Brown*, 380 U.S. 278, l.c. 292, 85 S.Ct. 980, l.c. 988, 13 L.Ed.2d 839, l.c. 849 (1965); 2 Am.Jur.2d *Administrative Law* § 751, at 651 (1962). The *ex parte* affidavit (verified complaint) is insufficient to meet the burden of proving that the findings of fact by OHA should not be accepted as conclusive on judicial review in this case.

### The Attempted Appeal in No. 5–48 and Motion for Stay Pending Appeal

On February 4, 1980, plaintiff Petraco filed a Notice of Appeal to this Court "from

the Order purporting to deny Plaintiff's Motion for Temporary Restraining Order entered ... on the 1st day of February, 1980, in Civil Action No. H–80–180" filed in the United States District Court for the Southern District of Texas. This appeal was docketed as No. 5–48.

### Motion of DOE to Dismiss

In a combined motion, DOE moved to dismiss the appeal in No. 5–48 from the denial of the motion for a temporary restraining order, and moved to dismiss the original application for injunctive relief in No. 5–47 on three principal grounds: (1) lack of jurisdiction of this Court to entertain the purported interlocutory appeal in No. 5–48 in the absence of certification under 28 U.S.C. § 1292(b) and lack of jurisdiction to entertain the original application for injunctive relief in No. 5–47; (2) failure of Petraco to demonstrate that it will suffer irreparable injury if injunctive relief is not granted; and (3) failure of Petraco to exhaust its administrative remedies.

We sustain the motion to dismiss the appeal in No. 5–48 on each ground asserted by DOE, for the following reasons. We deny the original application for injunctive relief in No. 5–47 for reasons stated separately hereinafter.

### Dismissal of the Attempted Appeal from the Interlocutory Order of the District Court Denying the Motion for a Temporary Restraining Order

Petraco contends that the decision of the District Court, made in its interlocutory order denying the motion of Petraco for a temporary restraining order (or for preliminary injunction) is appealable under 28 U.S.C. § 1291, even though the District Court denied the request for certification of the order for an interlocutory appeal under 28 U.S.C. § 1292(b).

We reserve for later discussion the question of the special limitations on the jurisdiction of this Court found in § 211(d)(2) of the ESA discussed in *Exxon Corporation v. Federal Energy Administration* (TECA 1975) 516 F.2d 1397. First we will determine if the order from which Petraco attempts to appeal is within the narrow class of interlocutory decisions appealable under 28 U.S.C. § 1291, in the absence of a certification for an interlocutory appeal under 28 U.S.C. § 1292(b).

In a series of decisions beginning with *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) and continuing through *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) the Supreme Court has described the narrow class of interlocutory orders appealable of right under § 1291. In the *Cohen* case, *supra*, the class of interlocutory decisions appealable of right under § 1291 was described as follows:

> This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. [337 U.S. at 546, 69 S.Ct. at 1226, 93 L.Ed. at 1536 (1949).]

The last expression on this subject is found in the *Coopers & Lybrand* case, *supra*, as follows:

> To come within the "small class" of decisions excepted from the final–judgment rule by Cohen, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. (Footnote omitted.) [437 U.S. at 468, 98 S.Ct. at 2458, 57 L.Ed.2d at 357–58 (1978).]

The interlocutory order of the District Court clearly does not fall within this class of decisions appealable under § 1291, first defined in *Cohen v. Beneficial Industrial Loan Corp.*, *supra*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The interlocutory decision of the District Court denying the motion for a temporary injunction, meets none of the tests of the *Cohen* case.

It did not "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated" as described in the *Cohen* case, *supra*. The decision in question was not a final determination. It was not separable from and collateral to rights asserted in the action; on the contrary, the interlocutory relief sought was the same as that sought in a final judgment in the action. If the relief is denied in a final judgment, an appeal of right under § 1291 would lie. *Coopers & Lybrand v. Livesay, supra*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *Evanson v. Union Oil Company of California* (TECA 1980) 619 F.2d 72. An example of an interlocutory decision of the District Court appealable to this Court without .certification and the history of the doctrine of the *Cohen* case, *supra*, is found in *Marine Petroleum Co. v. Champlin* (TECA 1980).

### An Appeal of Right to TECA From an Interlocutory Order Denying Temporary Injunctive Relief Will Not Lie

 A second reason for dismissing the appeal of Petraco in No. 5–48 is found in the decision of this Court in *Exxon Corporation v. Federal Energy Administration* (TECA 1975) 516 F.2d 1397. In that case, as in this case, the district courts had denied preliminary injunctive relief, and had not certified the order of denial for an interlocutory appeal under 28 U.S.C. § 1292(b). After carefully reviewing the provisions and legislative history of § 211(d)(2) of the ESA, Judge Christensen, for the majority held that in the absence of a certification under 28 U.S.C. § 1292(b), an appeal of right to TECA would not lie from an order granting or denying a preliminary injunction. The same rule applies with equal reason to an interlocutory order denying a temporary restraining order, since § 211(d)(2) of the ESA governs appeals from all interlocutory decisions. This is particularly true when the interlocutory order is made after an evidentiary hearing of the type accorded motions for preliminary injunctions, as in this case. *Sampson v. Murray, supra*, 415 U.S. at 86–88, 94 S.Ct. at 951, 39 L.Ed.2d at 184–85 (1974).

 In the absence of very exceptional circumstances not present in these cases, ordinarily there is no appeal of right to a court of appeals in civil cases from an interlocutory order granting, denying or dissolving a temporary restraining order under § 1292(a) or § 1291. In 16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure* § 3922, at 31 (1977), it is stated:

> , The general rule is that orders granting, denying, or dissolving temporary restraining orders are not appealable under § 1292(a)(1) as orders respecting injunctions. Exceptions to this general rule generally are made by determining that the order appealed from actually involves a preliminary injunction, or by departing entirely from the interlocutory appeal statute to allow appeal on a final judgment theory. [Footnotes omitted.]

The applicable rule is stated in 7 *Moore's Federal Practice* ¶ 65.07, at 65–83 (2d ed. 1979) as follows:

> In a civil action an order granting, denying, or dissolving a restraining order *qua* restraining order is nonappealable. But the statutory provision for an appeal to a court of appeals from an order granting an interlocutory injunction is not limited by the trial court's terminology, and when a restraining order, purporting to be "temporary" is continued for a substantial length of time past the period prescribed by Rule 65(b) and without compliance with its safeguards, the "restraining" order is appealable as an interlocutory injunction. [Footnotes omitted.]

For the foregoing two reasons, the attempted appeal in No. 5–48 should be dismissed.

### Failure of Petraco to Demonstrate Irreparable Injury

The District Court and OHA of DOE each found that Petraco had not sustained the burden of showing that irreparable injury

would occur if the challenged entitlement obligations were enforced. In the absence of threatened irreparable injury, the remedy at law for Petraco is adequate.

█ The parent holding company, a Luxembourg corporation, is the principal owner of Petraco. No determination of irreparable injury to Petraco is possible, without a showing of the data concerning ownership and the financial condition of the parent corporation. Petraco has failed to show the data concerning the identity of the shareholders of the parent corporation and the financial condition of the parent corporation, which owns about 70% of the stock of Petraco, according to counsel for Petraco. (Dist.Ct.Tr., February 1, 1980, at 15.) Therefore, the alleged conclusion of Petraco that it will suffer irreparable injury is not supported by a sufficient showing of fact. (In this connection, it is noted that the allegations of Petraco in the complaint in the District Court and in the application in this Court, carefully fall short of unconditionally stating the funds for payment of the entitlement obligations cannot be secured from any source, or that the business of the Brownsville refinery will be terminated if the entitlement obligations are enforced.)

### Failure of Petraco to Exhaust Administrative Remedies

At the time of the attempted appeal of Petraco in No. 5–48 and the original application to this Court in No. 5–47, Petraco had an available administrative remedy to apply for an exception (as distinguished from a temporary exception) from the entitlements program in respect to its start–up inventory. At that time that administrative remedy had neither been initiated nor exhausted. Petraco's counsel stated that the application for exception was initiated the day before the hearing of oral argument in these cases, and has submitted a purported copy thereof. So it is obvious that Petraco had not exhausted its administrative remedies prior to instituting these proceedings.

█ In the absence of exceptional circumstances, not shown to be present in these cases, Petraco is not entitled to equitable relief because of its failure to exhaust its administrative remedies. 5 Mezines, Stein & Gruff, *Administrative Law* § 49.03, at 49–30 (on unavailability of stays prior to final agency action); and § 49.01, at 49–2 (on the doctrine of necessity for exhaustion generally) (1979). This case does not come within the exceptions to the doctrine of necessity of exhaustion of administrative remedies described in 5 *Administrative Law, supra,* § 49.02, at 49–7 to 49–29 (1979). *Sampson v. Murray, supra,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Parisi v. Davidson,* 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

### Denial of Original Application to. TECA for Injunctive Relief in No. 5–47

The dismissal of the appeal in No. 5–48 from the order of the District Court leaves for determination the original application for injunctive relief filed in this Court in No. 5–47.

In that application and supporting argument Petraco relies on the All Writs Act, 28 U.S.C. § 1651, and the following language from *Exxon Corporation v. Federal Energy Administration, supra,* (TECA 1975) 516 F.2d 1397, l.c. 1404:

> If the granting of preliminary relief against application of a regulation or order is improperly refused and the matter is deemed of sufficient importance, our jurisdiction may be invoked by an original application which we can reject without interruption of the proceedings below, or grant if a sufficient showing is made to warrant the action.

It is not necessary to analyze the scope of power of this Court under the All Writs Act, and the nature and source of the rule of the *Exxon* case to grant injunctive relief against enforcement of the entitlement obligations. That analysis can await a more suitable application for an extraordinary writ or injunction. We assume that in ap-

propriate circumstances this Court possesses that power.

■ We conclude that the injunctive relief sought in the original application filed in No. 5–47 should be denied for the following reasons, more fully stated above: (1) failure of Petraco to show·irreparable injury; (2) failure of Petraco to exhaust available administrative remedies; and (3) failure of Petraco to show that OHA of DOE and the District Court have acted in excess of their power and jurisdiction, or have refused to act when they had a duty to do so, or have clearly abused their discretion. *Evanson v. Union Oil Company of California, supra*, (TECA 1980) 619 F.2d 72 and cases therein cited; *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).

### Conclusions and Orders

For the foregoing reasons, it is hereby ORDERED that the appeal in No. 5–48 be, and it is hereby, dismissed. It is further

ORDERED that the original application for injunctive relief be, and it is hereby, denied. It is further

ORDERED that all stay orders entered in Nos. 5–47 and 5–48 be, and they are hereby, vacated and for naught held, so that none of them shall be considered as relieving Petraco–Valley Oil & Refining Company, or any other party or parties of any lawful obligations, past, present or future.